IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

AMARILYS MONTALVO-FIGUEROA,

    **Plaintiff**,

        **v.**

DNA AUTO CORP. D/B/A KIA DE RIO
GRANDE AND/OR ADRIEL AUTO KIA
AND/OR ADRIEL NISSAN;
JUAN DEL VALLE-MARTÍNEZ;
JOHN AND JANE ROE;
INSURANCE CO. ABC,

    **Defendants.**

Civil **No.** 19-1021 (FAB)

OPINION AND ORDER

BESOSA, District Judge.

    Plaintiff Amarilys Montalvo-Figueroa ("Montalvo") initiated this employment discrimination lawsuit. (Docket No. 1.) Defendants DNA Auto Corp. ("DNA Auto") and Juan Del Valle-Martínez ("Del Valle") (collectively, "defendants") moved to dismiss Montalvo's claims pursuant to Federal Rule of Civil Procedure 12(b)(1), (6). (Docket No. 19.) Defendants' motion to dismiss, id., is **DENIED** for the reasons set forth in the body of this opinion.

**I.  Background**

    The Court draws the following facts from the complaint. (Docket No. 1 at pp. 2-11.) The Court "take[s] as true the

allegations of the complaint, as well as any inferences [the Court] can draw from it in the plaintiff's favor." Zenón v. Guzmán, 924 F.3d 611, 615 (1st Cir. 2019).[1]

The Court also draws facts from the materials appended to defendants' motion and Montalvo's response.[2] (Docket No. 25, Exs. 2-5; Docket No. 19, Exs. 1-2.) These appended materials are "documents the authenticity of which are not disputed by the parties; . . . official public records; . . . documents central to plaintiffs' claim; or . . . documents sufficiently referred to in the complaint." Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993); see Newman v. Lehman Bros. Holdings Inc., 901 F.3d 19, 25 (1st Cir. 2018); Brennan v. Zafgen, Inc., 853 F.3d 606, 609-10 (1st Cir. 2017). No party disputes the authenticity of any of the appended materials. There is ample precedential support for considering Montalvo's administrative charge of discrimination, (Docket No. 19, Ex. 1,) and the Equal Employment Opportunity Commission ("EEOC")'s responsive authorization to sue, (Docket No. 19, Ex. 2,) as linked to her complaint, see, e.g., Jorge v. Rumsfeld, 404 F.3d 556, 559 (1st Cir. 2005); Barber v. Verizon New

---

[1] As discussed below, the Court considers defendants' motion pursuant to Federal Rule of Civil Procedure 12(b)(6).

[2] Montalvo attached a document written in Spanish unaccompanied by any English translation. (Docket No. 25, Ex. 1.) The Court does not consider the Spanish-language document at all. 48 U.S.C. § 864; Local Rule 5(g); Puerto Ricans for P.R. Party v. Dalmau, 544 F.3d 58, 67 (1st Cir. 2008).

Eng., Inc., Civ. No. 05-390, 2005 WL 3479834, at *1 n.1 (D.R.I.
Dec. 20, 2005); Maldonado-Cordero v. AT&T, 73 F. Supp. 2d 177, 185
(D.P.R. 1999) (Pieras, J.), overruled on other grounds by Rosario
Toledo v. Distribuidora Kikuet, Inc., 151 D.P.R. 634 (2000), as
recognized in Bonilla-Pérez v. Citibank NA, Inc., 892 F. Supp. 2d
361, 366 (D.P.R. 2012) (Casellas, J.).  Courts have also confirmed
the propriety of considering, in the context of a motion to
dismiss, the correspondence between Montalvo's attorney and the
EEOC.  (Docket No. 25, Exs. 2-5); see, e.g., Jorge, 404 F.3d at
559 (holding that correspondence between an aggrieved person's
attorney and EEOC may be considered in the context of a motion to
dismiss).  In any case, no party disputes that the Court may
properly consider the appended materials.  Fire & Police Pension
Ass'n of Colo. v. Abiomed, Inc., 778 F.3d 228, 232 n.2 (1st Cir.
2015) (explaining, on review of a motion to dismiss, that the court
would consider correspondence between a federal agency and
regulated entity and that "[n]either party disputes that the court
may properly consider these materials").

Montalvo was a sales manager at a car dealership owned or
operated by DNA Auto or one of its affiliates.  See Docket No. 1
at p. 3.  She was the only female sales manager at the dealership.
Id. at p. 10.

Del Valle is a DNA Auto employee.  <u>Id.</u> at p. 3.  Del Valle is male.  <u>Id.</u>  He is not a supervisor.  <u>See</u> <u>id.</u>

On February 24, 2018, Montalvo was speaking with coworkers in the lunchroom at work.  <u>Id.</u> at p. 3.  Del Valle, with whom she was not speaking, slapped Montalvo on her butt.  <u>Id.</u> at p. 4.  Montalvo had not consented to the slapping.  <u>Id.</u>  The slap was forceful. <u>Id.</u> at pp. 3-4.

Montalvo exclaimed, "listen, you are being totally disrespectful!  What lack of respect is that?"  <u>Id.</u> at p. 4.  Del Valle did not respond.  <u>Id.</u>  He proceeded to leave the lunchroom, telling Montalvo to "move because she was standing in his way." <u>Id.</u>  Before leaving, Del Valle stared menacingly at Montalvo.  <u>Id.</u> Montalvo took note of Del Valle's attitude.  <u>Id.</u>  She felt embarrassed and humiliated in front of her coworkers.  <u>Id.</u>

Montalvo reported the incident to her general manager and to human resources.  <u>Id.</u> at pp. 4-5.  She later received a call from her general manager in which he referred to Montalvo as "my little one."  <u>Id.</u> at p. 5.  Additionally, the general manager stated that Del Valle "is innocent" and remarked that "look, even I would've." <u>Id.</u>  Montalvo felt even more upset and humiliated, and ended the phone call without responding.  <u>Id.</u>

The phone call left Montalvo feeling angry, offended, and embarrassed.  <u>Id.</u> at p. 6.  Over the next days, Montalvo was

sleepless, nervous, frustrated, fearful, and without appetite. Id.

A few days later, Del Valle parked his vehicle directly in front of Montalvo's office. Id. He again stared menacingly at her. Id. Montalvo was nervous and uncomfortable, and felt that DNA Auto had not taken precautions to keep Del Valle away from her. Id.

On March 1, Montalvo met with representatives of the human resources office. Id. at p. 7. The representatives informed Montalvo they were investigating the incident. See id. at pp. 7, 10. They also asked Montalvo how she would solve this matter and suggested prohibiting Del Valle from coming near Montalvo's work area. Id. at p. 7. Montalvo said DNA Auto should resolve the issue according to applicable laws, rules, and company regulations. Id.

After interviewing Montalvo, a human resources representative noticed she was affected emotionally and encouraged Montalvo to take some of her vacation days. Id. at p. 7. Although Montalvo demurred, one of the representatives told Montalvo that her vacation leave would commence that day and last until March 10. Id. at p. 8. When she went to her office to retrieve her belongings, she was told she could not be there. Id.

Montalvo took the forced vacation. See id. While on vacation, Montalvo's vacation days were depleted. Id. Del Valle was permitted to continue working. Id.

Over the ensuing days, Montalvo visited two medical professionals. Id. at p. 9. On March 6, she saw a psychologist. The psychologist suggested she visit the EEOC. Id. On March 8, she saw a doctor. Id. The doctor gave her a medical excuse for sick leave until March 12. Id.

On March 9, Montalvo filed a charge of discrimination with the EEOC. (Docket No. 19, Ex. 1 at p. 1.) The filing states that discrimination occurred between February 24 to March 9. Id. It notes the discrimination was based on sex. Id. The filing describes the particulars of the charge as follows:

> On February 24, 2018 I was harassed by Juan (Gruero). I notified Human Resources. I was sent home while [DNA Auto] performs the investigation.
>
> The same day my supervisor calls me (Omar) and tells me that "he is innocent, I would have done the same thing"
>
> I understand that I was sexually harassed and that Human Resources has not taken the appropriate actions.
>
> See Title VII, 1964

Id.

When Montalvo returned to work on March 13, a human resources representative met her in her office. (Docket No. 1 at p. 9.) The representative asked Montalvo, "My, do you still work here? I

thought that [DNA Auto] had given you a few thousand dollars so you would not to return to work." Id.

That afternoon, Montalvo met with a psychologist. Id. Montalvo then took medical leave until March 18. Id.

Montalvo returned to work on March 19. Id. She discovered that all her managerial and administrative duties had been stripped. Id. She had no duties or tasks to perform. Id. Her supervisor, or someone else assigned by him, assumed all her duties. Id.

Over the next few days, Del Valle twice came near Montalvo's work area in an intimidating manner. Id. at p. 10. She felt violated, nervous, and frustrated. Id.

At some point thereafter, Montalvo's tenure as a DNA Auto employee ended. See id. at p. 9.

On July 31, the EEOC mailed a document entitled "Notice of Right to Sue." (Docket No. 19, Ex. 2 at p. 1.) The document states that "[l]ess than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge" and "[t]he EEOC is terminating its processing of this charge." Id. The document also notes that it was issued on Montalvo's request and informs that a "lawsuit under Title VII . . . must be filed in a federal

or state court within 90 days of . . . receipt of this notice; or your right to sue based on this charge will be lost." Id. (emphasis omitted).

The EEOC sent the July 31 letter to an incorrect address. See Docket No. 25, Ex. 3 at p. 5. It appears there were two errors leading to this situation—Montalvo provided the EEOC with her physical address rather than her mailing address, and the EEOC made a typographical error in addressing the letter to Montalvo's physical address. See id. at p. 1. Postal authorities marked the letter "insufficient address" and it was "return[ed] to sender" on August 7. Id. at pp. 1, 5.

On August 24, an attorney representing Montalvo emailed an EEOC official. (Docket No. 25, Ex. 4 at pp. 5-6.) The attorney noted that Montalvo had requested a right-to-sue letter on June 7th and had not yet received a response. Id. at p. 6. He requested an update and, to the extent necessary, renewed Montalvo's June 7 request. Id.

The next message in the record, dated August 27, suggests the EEOC emailed a copy of the July 31 letter to the attorney, or at least that the attorney had notice of the letter on that date. Id. at p. 4. This is because the attorney stated that the letter appears mailed on July 31, 2018, that Montalvo never received the letter, and that the letter is addressed to a physical rather than

a mailing address.  Id.  The attorney also asked how to go about

changing the mailing date because almost a month had passed since

the July 31 letter was mailed.  Id.

　　　The attorney and EEOC officials continued to communicate.

See id. at pp. 1-4.  On September 6, the director of the EEOC's

San Juan office wrote to the attorney.  Id. at p. 1.  The director

acknowledged that the July 31 letter was returned to the San Juan

office because of an incorrect address and asserted that "[i]t was

the responsibility of the Charging Party to keep informed the

Commission and the investigator with the correct information to

include address, telephone number etc."  Id.  The director further

instructed,

> To comply with the regulation, please send a letter to
> the San Juan Office indicating that you represent the
> Charging Party and that you have not received the [notice
> of the right to sue].  Also provide the new address you
> want the document [to] be mailed to.  You will receive
> the [notice of the right to sue] with the original
> envelop[e].  As indicated above your 90 days will start
> on the date of receipt.

Id.

　　　The director of the EEOC's San Juan office sent a letter to

Montalvo's attorney dated October 9.  (Docket No. 25, Ex. 5 at

p. 1.)  The letter states that it regards Montalvo's request for

notice of the right to sue and is attached to the original envelope

postmarked by postal authorities.  Id.  In their briefing on

defendants' motion to dismiss, the parties agree that attached to the document was the notice of the right to sue.  <u>See</u> Docket No. 28 at p. 3; Docket No. 25 at p. 5.  The record does not reveal whether the document and notice were sent by regular mail, email, or some other means.  Neither does the record reveal when Montalvo or her attorney received the document and its attachment.

On January 8, 2019, Montalvo filed her complaint.  (Docket No. 1.)  She alleges violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, on the grounds that (i) DNA Auto failed to protect her from unwanted harassment that altered the conditions of her employment and created an abusive working environment, (ii) Del Valle acted in a physically threatening and humiliating manner that unreasonably interfered with her work performance, and (iii) DNA Auto retaliated against her when she reported back to work after her forced vacation leave and her approved sick leaves, <u>see</u> Docket No. 1 at pp. 11–12.  Montalvo also alleges that DNA Auto violated the Equal Pay Act, 29 U.S.C. § 206(d), by failing to pay her at a rate equal to the rate paid to male sales managers, <u>see</u> Docket No. 1 at p. 12.  Finally, Montalvo alleges violation of various laws of the Commonwealth of Puerto Rico because unlawful conduct caused discriminatory treatment in her employment.  <u>Id.</u> at pp. 12–13.

## II. **Parties' Positions**

### A. **Defendants**

Defendants ask this Court to dismiss the complaint. <u>See</u> Docket No. 19 at pp. 1. They assert three independent bases for dismissal.

First, defendants argue that Montalvo waited too long to file her complaint. According to defendants' motion, 42 U.S.C. § 2000e-5(f)(1) requires Montalvo to file her complaint within ninety days of July 31, 2018, the date on which EEOC first mailed the notice of Montalvo's right to sue. <u>Id.</u> at pp. 4-6. Defendants also note that the July 31 notice was issued on Montalvo's request, so Montalvo had constructive notice. <u>Id.</u> at p. 5.

In a reply brief, defendants supplement their motion with two alternative arguments. If Montalvo or her attorney first gained notice of her right to sue on August 27, defendants argue that her complaint is still late because it was filed more than ninety days after August 27. (Docket No. 28 at pp. 3-6.) Even if the ninety-day period began on October 9, defendants continue, the complaint was one day tardy because it would need to have been filed by January 7, 2019. <u>Id.</u> at p. 7.

Second, defendants argue that Montalvo failed to exhaust administrative remedies with the EEOC concerning her allegations of stripping duties and intimidation. <u>See</u> Docket No. 28 at

pp. 7-9; Docket No. 19 at p. 6.  According to defendants, the Court
may only consider claims that are reasonably related to Montalvo's
administrative charge.  See Docket No. 19 at p. 7.  Montalvo's
complaint should be dismissed, defendants continue, because her
allegations of duty stripping and intimidation were not stated in
her administrative charge.  See Docket No. 28 at pp. 7-9; Docket
No. 19 at pp. 7-8.  Defendants assert this is in keeping with
Maldonado-Cordero, 73 F. Supp. 2d 177, a decision by a court in
this district, which defendants contend dismissed a complaint
because it included factual allegations that were not alleged in
the administrative charge.  Docket No. 19 at p. 6.  Defendants
also posit that Montalvo's "naked" administrative charge of a
hostile environment without details notifying the employer that it
was being charged with sexual harassment, does not clear the hurdle
for exhaustion found in Maldonado-Cordero.  See Docket No. 28 at
p. 9; Docket No. 19 at pp. 8-9.

       Third, defendants argue that Montalvo's complaint does
not state a claim for hostile work environment sexual harassment.
See Docket No. 19 at p. 9; Docket No. 28 at p. 10.  According to
defendants, Montalvo's complaint fails to set forth sufficient
allegations to satisfy the requirement that a workplace be so
severe or pervasive as to alter the conditions of Montalvo's
employment.  See Docket No. 19 at p. 12; Docket No. 28 at p. 10.

An isolated sexual advance without more, defendants continue, cannot meet that requirement.  <u>See</u> Docket No. 19 at pp. 13–14; Docket No. 28 at p. 10.  Defendants aver that Montalvo must prove her claim by indicating a series of events over time that creates a hostile work environment.  <u>See</u> Docket No. 19 at p. 12; Docket No. 28 at p. 10.  Defendants contend that Montalvo only alleges one isolated incident—butt slapping by Del Valle—along with her own mental thought processes and dialogue with persons not identified as harassers.  <u>See</u> Docket No. 19 at pp. 12–14; Docket No. 28 at p. 11.

### B.  Montalvo

Montalvo argues that her complaint is not time-barred. (Docket No. 25 at pp. 4–5.)  Montalvo states that when it became evident that the July 31 letter was mailed to the wrong address, an EEOC official directed her attorney to contact another EEOC official to request a correct issuance of the notice of her right to sue.  <u>Id.</u> at p. 5.  That correct notice was issued on October 9, she continues, giving her until January 8, 2019 to file a complaint.  <u>Id.</u>

Montalvo further argues that she exhausted administrative remedies.  <u>Id.</u> at p. 6.  She avers that she told an EEOC investigator about the stripping of duties and intimidation,

and cannot explain why these facts were not recorded in the charge of discrimination.  Id.

Finally, Montalvo states that she satisfies the requirements for making out a *prima facie* case of hostile environment harassment.  Id. at pp. 6-7.

**III. Scope of Defendants' Motion to Dismiss**

Defendants' motion to dismiss asserts no bases for dismissal of Montalvo's claims pursuant to the Equal Pay Act and Puerto Rico law.  For instance, defendants focus on a ninety-day timeliness requirement, (Docket No. 19 at pp. 4-6,) not the Equal Pay Act's requirement to commence actions within two or three years after a cause of action has accrued, 29 U.S.C. § 255(a).  Moreover, defendants focus on whether Montalvo exhausted her administrative remedies, (Docket No. 19 at pp. 6-9,) but the Equal Pay Act does not require exhaustion of administrative remedies, Miranda v. B & B Cash Grocery Store, Inc., 975 F.2d 1518, 1527 (11th Cir. 1992); Ososky v. Wick, 704 F.2d 1264, 1265 (D.C. Cir. 1983); Mullenix v. Forsyth Dental Infirmary for Children, 965 F. Supp. 120, 143 n.42 (D. Mass. 1996).  Indeed, defendants' motion nowhere discusses in any detail Montalvo's claims pursuant to the Equal Pay Act or Puerto Rican law.

Consequently, the Court does not consider whether to dismiss Montalvo's claims pursuant to the Equal Pay Act or Puerto Rican

law.[3] <u>Rodríguez v. Mun. of San Juan</u>, 659 F.3d 168, 175 (1st Cir. 2011); <u>United States v. Zannino</u>, 895 F.2d 1, 17 (1st Cir. 1990). As such, to the extent defendants move to dismiss the complaint in full, <u>see</u> Docket No. 19 at pp. 1, 4, 6, that request is **DENIED**. The Court will proceed to examine whether to dismiss Montalvo's Title VII claim.

## IV. **Brief Introduction to Relevant Title VII Requirements**

Title VII strikes at discrimination in the workplace. Pursuant to Title VII, an employer cannot "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). An employer also cannot "limit, segregate, or classify his employees . . . in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex,

---

[3] The Court is satisfied that Montalvo's claims pursuant to Title VII and the Equal Pay Act arise under federal law. 28 U.S.C. § 1331; <u>see</u> <u>Mims v. Arrow Fin. Servs., LLC</u>, 565 U.S. 368, 377 (2012); <u>Franchise Tax Bd. v. Constr. Laborers Vacation Tr. for S. Cal.</u>, 463 U.S. 1, 27-28 (1983); <u>see also</u> 42 U.S.C. § 2000e-5(f)(3) ("Each United States district court . . . shall have jurisdiction of actions brought under this subchapter."). The Court is also satisfied that Montalvo's claims pursuant to the laws of the Commonwealth of Puerto Rico are "so related" to her claims pursuant to Title VII and the Equal Pay Act "that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a); <u>see</u> <u>United Mine Workers of Am. v. Gibbs</u>, 383 U.S. 715, 725 (1966).

or national origin." Id. § 2000e-2(a)(2). Additionally, it is unlawful for an employer "to discriminate against any individual . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge . . . or participated in any manner in an investigation, proceeding, or hearing under this subchapter." Id. § 2000e-3(a).

The legislative purpose for Title VII is remedial. "Congress enacted Title VII . . . to assure equality of employment opportunities by eliminating those practices and devices that discriminate on the basis of race, color, religion, sex, or national origin." Alexander v. Gardner-Denver Co., 415 U.S. 36, 44 (1974). "Title VII is a vehicle through which an individual may seek recovery for employment discrimination on the grounds of race, color, religion, gender, or national origin." Franceschi v. U.S. Dep't of Veterans Affairs, 514 F.3d 81, 85 (1st Cir. 2008).

There are a host of causes of action furnished by Title VII. One is for requiring an employee to work in an abusive or hostile environment. Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993); Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 64-65 (1986). Another is for retaliation. See Univ of Tex. S.W. Med. Ctr. v. Nassar, 570 U.S. 338, 342-43 (2011).

"Judicial recourse under Title VII . . . is not a remedy of first resort." Morales-Vallellanes v. Potter, 339 F.3d 9, 18 (1st Cir. 2003). "Before filing a Title VII claim, an employee must first exhaust administrative remedies, a process that begins with the filing of an administrative charge before the EEOC."[4] Abraham v. Woods Hole Oceanographic Inst., 553 F.3d 114, 119 (1st Cir. 2009).

After filing an administrative charge with the EEOC, "the employee may sue in federal court only if the EEOC dismisses the administrative charge or if it does not bring a civil suit or enter into a conciliation agreement within 180 days of the filing of the administrative charge." Id.; see 42 U.S.C. § 2000e-5(f)(1). The employee must also wait for the EEOC to give notice of the employee's right to sue, which generally occurs in what has been termed a right-to-sue letter. See Abraham, 553 F.3d at 119.

A person must bring suit "within ninety days after the giving of such notice" by the EEOC in the right-to-sue letter. 42 U.S.C. § 2000e-5(f)(1); see Abraham, 553 F.3d at 119. This ninety-day

---

[4] Federal employees are subject to substantively similar requirements as the requirements applicable to private sector employees. Mathirampuzha v. Potter, 548 F.3d 70, 75 (2d Cir. 2008); see Jorge, 404 F.3d at 564 (discussing requirements applicable to federal employees). Claims pursuant to the Americans with Disabilities Act also require compliance with the administrative procedures specified in Title VII. Thornton v. United Parcel Serv., Inc., 587 F.3d 27, 31 (1st Cir. 2009). And judicial precedents interpreting the Age Discrimination in Employment Act are instructive to Title VII cases. Vera v. McHugh, 622 F.3d 17, 30 n.16 (1st Cir. 2010). In this opinion, the Court analyzes cases from these contexts in addition to private sector Title VII cases.

requirement is discussed in this opinion as Title VII's timeliness requirement.[5]   "In the absence of a recognized equitable consideration, the court cannot extend the limitations period by even one day."  Rice v. New Eng. Coll., 676 F.2d 9, 11 (1st Cir. 1982) (affirming dismissal of claim filed ninety-one days after receipt of a right-to-sue letter).

Administrative exhaustion also requires satisfaction of a "presentment" requirement.  "A Title VII suit may extend as far as, but not beyond, the parameters of the underlying administrative charge."  Jorge, 404 F.3d at 565.  This "presentment" requirement is not found in the language of Title VII.  See 42 U.S.C. § 2000e-5(f)(1); Clockedile v. N.H. Dep't of Corr., 245 F.3d 1, 4 (1st Cir. 2001).  Rather, it is a judicially created doctrine based on the purposes of promoting early conciliation between the parties and providing prompt notice of the claim to the employer and the EEOC.  Thornton v. United Parcel Serv., Inc., 587 F.3d 27, 31 (1st Cir. 2009); Lattimore v. Polaroid Corp., 99 F.3d 456, 464 (1st Cir. 1996).

The failure to exhaust administrative remedies generally "'bars the courthouse door.'"  Franceschi, 514 F.3d at 85 (quoting Bonilla v. Muebles J.J. Álvarez, Inc., 194 F.3d 275, 278 (1st Cir.

---

[5] Title VII has other time restrictions which are not at issue here.

1999)).  "[A]n employee's failure to follow the administrative route to its due completion," however, "does not automatically doom a Title VII claim." <u>Jorge</u>, 404 F.3d at 565.  The exhaustion requirement is subject to equitable exceptions, but these are invoked sparingly and interpreted narrowly.  <u>Id.</u>  "In order for equitable tolling to apply, the plaintiff must show that circumstances beyond his or her control precluded a timely filing." <u>Abraham</u>, 553 F.3d at 119.

## V.  Legal Standard

Defendants seek dismissal pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Rule 12(b)(1) addresses lack of subject matter jurisdiction, while Rule 12(b)(6) addresses failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(1), (6).  Defendants do not clearly articulate which bases for dismissal are offered pursuant to Rule 12(b)(1) and which are pursuant to Rule 12(b)(6), but suggest their timeliness argument is a basis for dismissal pursuant to Rule 12(b)(1).  <u>See</u> Docket No. 28 at p. 6 ("[T]his Court has no jurisdiction because the Plaintiff is time barred.").  The Court believes that all of defendants' arguments are properly considered pursuant to Rule 12(b)(6).

The presentment requirement is not jurisdictional.  In <u>Fort Bend County v. Davis</u>, 139 S. Ct. 1843, 1850-52 (2019), the Supreme

Court recently held that a Title VII plaintiff's failure to allege religious discrimination in an administrative charge did not constitute a jurisdictional defect to consideration of the allegation in federal court. The presentment requirement is a mandatory processing rule, not a jurisdictional requirement. Id. at 1851-52.

The timeliness requirement is also not jurisdictional. In Rice, 676 F.2d at 10, a plaintiff filed a judicial complaint ninety-one days after receipt of a right-to-sue letter. The Rice court "conclude[d] that section 2000e-5(f)(1) is nonjurisdictional" and considered "whether there was any waiver, estoppel, or equitable ground for tolling the statute." Id. One year later, a party argued to the Supreme Court that the ninety-day timeliness requirement could not be tolled because it is jurisdictional. Crown, Cork & Seal Co., Inc. v. Parker, 462 U.S. 345, 349 n.3 (1983). The Supreme Court held the argument foreclosed by its prior decisions in Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 398 (1982), and Mohasco Corp. v. Silver, 447 U.S. 807, 811 n.9 (1980). Crown, Cork & Seal, 462 U.S. at 349 n.3. The Zipes Court held the time limit for filing a discrimination charge with the EEOC—a different time limit than the one at issue in this case—is not a jurisdictional prerequisite to bringing a Title VII suit. 455 U.S. at 393. In keeping with

these decisions, contrary to defendants' argument, <u>see</u> Docket No. 28 at p. 6, the Court would not lack jurisdiction even if Montalvo's claim is time barred.

The presentment and timeliness requirements are affirmative defenses. In its recent decision, the Supreme Court characterized the presentment requirement as "a potentially dispositive defense." <u>Fort Bend</u>, 139 S. Ct. at 1851–52. Similarly, the First Circuit Court of Appeals has said the presentment requirement, exhaustion, and statute of limitations are affirmative defenses. <u>See</u> <u>Mercado v. Ritz-Carlton San Juan Hotel</u>, 410 F.3d 41, 45 (1st Cir. 2005); <u>Conetta v. Nat'l Hair Care Ctrs., Inc.</u>, 236 F.3d 67, 76–77 (1st Cir. 2001); <u>see also</u> <u>Álvarez-Maurás v. Banco Popular of P.R.</u>, 919 F.3d 617, 628 (1st Cir. 2019) (stating that a statute of limitations applicable to a racketeering claim is an affirmative defense); <u>Salas v. Wis. Dep't of Corr.</u>, 493 F.3d 913, 922 (7th Cir. 2007) ("A plaintiff's failure to exhaust administrative remedies is an affirmative defense, which is the defendant's burden to prove.").

Might it be proper to consider the timeliness and presentment requirements pursuant to Federal Rule of Civil Procedure 12(b)(1) despite their non-jurisdictional character? After all, the First Circuit Court of Appeals has stated that the "[f]ailure to exhaust administrative remedies and ripeness challenges may be appropriate

in a motion to dismiss for lack of subject matter jurisdiction." United States v. Lahey Clinic Hosp., Inc., 399 F.3d 1, 8 n.6 (1st Cir. 2005). And the court has at times addressed timeliness and presentment requirements pursuant to Rule 12(b)(1). See, e.g., Bonilla, 194 F.3d at 277; Chico-Vélez v. Roche Prods., Inc., 139 F.3d 56, 58-59 (1st Cir. 1998). A leading treatise, moreover, states that "the scope of Rule 12(b)(1) is flexible, often serving as a procedural vehicle for raising various residual defenses . . . challenging the federal court's ability to proceed with the action." 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil § 1350, at 100-02 (3d ed. 2004).

The problem with that approach is the First Circuit Court of Appeals' recent countervailing indications. In Martínez-Rivera v. Puerto Rico, 812 F.3d 69, 73 (1st Cir. 2016), the court doubted that Title VII statute of limitations and exhaustion issues implicate subject matter jurisdiction, and followed with the statement that "[p]erhaps then the judge should have analyzed the case under Federal Rule of Civil Procedure 12(b)(6) (failure to state a claim) rather than under Rule 12(b)(1) (lack of subject-matter jurisdiction)." In Mercado, 410 F.3d at 46 n.6, the court noted the defendant "acknowledged" that its motion to dismiss pertaining to timely filing requirements pursuant to Title VII was

more properly considered a motion pursuant to Rule 12(b)(6) than Rule 12(b)(1), and treated it as such.

Other courts have also held that Rule 12(b)(6) provides an appropriate basis for arguing a failure to exhaust administrative remedies before filing a Title VII suit, including district courts in this circuit. See, e.g., Innocent v. HarborOne Bank, 319 F. Supp. 3d 571, 572 n.2 (D. Mass. 2018); Maldonado-Cordero, 73 F. Supp. 2d at 185. Courts of appeal in other circuits have also done so. See, e.g., Anjelino v. New York Times Co., 200 F.3d 73, 87 (3d Cir. 2000) ("[T]he District Court should have considered the exhaustion and timeliness defenses presented in the case under Rule 12(b)(6), rather than under Rule 12(b)(1)."); see also Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit, 369 F.3d 464, 467 n.4 (5th Cir. 2004) (stating, in a breach of contract and misrepresentation action, that "Rule 12(b)(6) forms a proper basis for dismissal for failure to exhaust administrative remedies.").

Since the timeliness and presentment requirements do not implicate the Court's subject matter jurisdiction, and because of the ambiguity in defendants' motion, the Court will follow the lead of Martínez-Rivera, 812 F.3d at 73, and evaluate the defendants' timeliness and presentment arguments as affirmative defenses pursuant to Rule 12(b)(6). Thus, all of defendants' arguments are considered pursuant to Rule 12(b)(6).

Rule 12(b)(6) permits a defendant to move to dismiss an action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).  To survive the motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is facially plausible if, after accepting as true all non-conclusory factual allegations, the court can draw the reasonable inference that the defendant is liable for the misconduct alleged.  Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011).  "Plausible, of course, means something more than merely possible, and gauging a pleaded situation's plausibility is a context-specific job that compels [a court] to draw on [its] judicial experience and common sense."  Zenón, 924 F.3d at 616 (internal quotation marks omitted). A court must decide whether the complaint alleges sufficient facts to "raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555.  The burden is on the plaintiff plausibly to allege a viable cause of action.  Hochendoner v. Genzyme Corp., 823 F.3d 724, 730 (1st Cir. 2016).

Affirmative defenses may be raised in a motion to dismiss. Zenón, 924 F.3d at 616; Blackstone Realty LLC v. F.D.I.C., 244 F.3d 193, 197 (1st Cir. 2001).  Dismissal is appropriate if "there

is no doubt that the plaintiff's claim is barred by the raised defense" based on facts that are "clear on the face of the plaintiff's pleadings" along with "matters fairly incorporated within [the complaint] and matters susceptible to judicial notice." Zenón, 924 F.3d at 616 (internal quotation marks omitted); see Blackstone Realty, 244 F.3d at 197; see also Ruiz-Sánchez v. Goodyear Tire & Rubber Co., 717 F.3d 249, 252 (1st Cir. 2013) (quoting Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006)) ("Dismissal 'on the basis of an affirmative defense requires that (i) the facts establishing the defense are definitively ascertainable from the complaint and the other allowable sources of information, and (ii) those facts suffice to establish the affirmative defense with certitude.'"). The burden is on defendants to prove the affirmative defenses. See Monteagudo v. Asociación de Empleados del Estado Libre Asociado de P.R., 554 F.3d 164, 176–77 (1st Cir. 2009); Payan v. Aramark Mgmt. Servs. Ltd. P'Ship, 495 F.3d 1119, 1122–23 (9th Cir. 2007); Colbert v. Potter, 471 F.3d 158, 165 (D.C. Cir. 2006); Aguayo v. Napolitano, Civ. No. 09-2113, 2012 WL 12895219, at *4 (D.P.R. Nov. 20, 2012) (Domínguez, J.).

## IV. Discussion

### A. Timeliness

#### 1. General Principles

The ninety-day period in section 2000e-5(f)(1) begins when the aggrieved person receives, or is given, notice of the right-to-sue letter. 42 U.S.C. § 2000e-5(f)(1); Abraham, 553 F.3d at 119; Franceschi, 514 F.3d at 85; see also 29 C.F.R. § 1601.28(e)(1) (requiring right-to-sue letters to indicate "[a]uthorization to the aggrieved person to bring a civil action under title VII . . . within 90 days from receipt of such authorization"); Scott v. Gino Morena Enters., LLC, 888 F.3d 1101, 1108-10 n.6 (9th Cir. 2018) (holding that the statutory clock is triggered when notice is given). Courts have also held the ninety-day clock is triggered when a person's attorney receives notice, Reschny v. Elk Grove Plating Co., 414 F.3d 821, 823 (7th Cir. 2005); Ringgold v. Nat'l Maint. Corp., 796 F.2d 769, 770 (5th Cir. 1986); see also Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 92-93 (1990) (concluding that a claim of discrimination against the federal government must be brought within ninety days of receipt of the right-to-sue letter by claimant or her counsel), so long as the plaintiff has authorized the attorney to accept notice, see DeTata v. Rollprint Packaging Prods. Inc., 632 F.3d 962, 970

(7th Cir. 2011); <u>Thomas v. KATV Channel 7</u>, 692 F.2d 548, 551 (8th Cir. 1982).

Sometimes, the record does not disclose the date that notice was received by, or given to, the aggrieved party. In those cases, "[t]here is a presumption that, in the absence of evidence to the contrary, a notice provided by a government agency is deemed to have been placed in the mail on the date shown on the notice and received within a reasonable time thereafter." <u>Loubriel v. Fondo del Seguro del Estado</u>, 694 F.3d 139, 143 (1st Cir. 2012). Courts often assume that receipt of a right-to-sue letter took three days from the date the letter was mailed. <u>Id.</u>; <u>see, e.g.</u>, <u>Baldwin Cty. Welcome Ctr. v. Brown</u>, 466 U.S. 147, 148 n.1 (1984) (per curiam); <u>Hales v. Casey's Mktg. Co.</u>, 886 F.3d 730, 736 (8th Cir. 2018); <u>McGill v. U.S. Express Truck Co.</u>, 290 F. App'x 373, 373 n.1 (1st Cir. 2008); <u>see also</u> <u>Lynn v. JER Corp.</u>, 573 F. Supp. 17, 19 (M.D. Tenn. 1983) ("[T]he letter would take at least one day to be received by plaintiff.").

### 2. July 31

The ninety-day period did not commence on July 31, 2018, or a few days afterwards. Neither Montalvo nor her attorney could have received the right-to-sue letter at that time, as shown by the postal authorities' indication that the letter was "return[ed] to sender" because of an "insufficient address."

(Docket No. 25, Ex. 3 at pp. 1, 5.)  Accordingly, there is more reason than a mere denial by Montalvo to believe that the notice was not given on or around July 31.  Cf. Uwakwe v. Pelham Acad., 286 F. Supp. 3d 213, 220–24 (D. Mass. 2017) (collecting cases on whether a denial of receipt is sufficient to overcome the presumption of receipt, and deciding that it is not).  In short, there is no reason to think Montalvo or her attorney were "giv[en] . . . notice" on July 31 or within a few days thereafter.  42 U.S.C. § 2000e-5(f)(1).

Moreover, the EEOC is at least partially to blame for the failure to give notice on or around July 31 because of its typographical error in addressing the letter.  See Docket No. 25, Ex. 3 at p. 1.  This is another reason not to commence the statutory clock at or around July 31.  See DeTata, 632 F.3d at 969 (refusing to find the plaintiff time-barred based on a delay in receiving the right-to-sue letter caused by the EEOC's mishandling of the plaintiff's file); Stallworth v. Wells Fargo Armored Servs. Corp., 936 F.2d 522, 525 (11th Cir. 1991) (holding dismissal improper where EEOC failed to send right-to-sue letter to plaintiff's attorney as she had requested).

### 3.  August 27

The ninety-day period also did not begin on August 27, 2018.  Granted, it appears that Montalvo's attorney

received the July 31 letter on that date by email.  See Docket No. 25, Ex. 4 at p. 4.  That would ordinarily constitute receipt of the notice.  Irwin, 498 U.S. at 92–93; Reschny, 414 F.3d at 823; Ringgold, 796 F.2d at 770.  Even if it is improper at this stage of the proceeding to infer that the attorney actually received a copy of the letter, the materials before the Court show that Montalvo's attorney received notice of the existence of the letter and the EEOC's authorization to sue.  See Docket No. 25, Ex. 4 at p. 4.  Oral notice, some circuit courts of appeal have held, can be sufficient to begin the ninety-day statutory clock. Ebbert v. DaimlerChrysler Corp., 319 F.3d 103, 116 (3d Cir. 2003); Ball v. Abbott Advertising, Inc., 864 F.2d 419, 421 (6th Cir. 1988).  So long as the substance of notice is sufficient, the ninety-day clock begins.  Ebbert, 319 F.3d at 116.

There is some doubt, however, about whether sufficient notice was provided on August 27.  The record does not reveal what the EEOC said on or before that date about the timeliness requirement.  Meanwhile, beginning the ninety-day clock on August 27 would run counter to the EEOC's indication on September 6.  On September 6, the EEOC indicated to Montalvo's attorney that the ninety-day clock had not yet begun and would not begin until receipt of the right-to-sue letter with the original envelope.  See Docket No. 25, Ex. 4 at p. 1 ("You will receive the

[notice of the right to sue] with the original envelop[e].  As indicated above your 90 days will start on the date of receipt.").

As the Seventh Circuit Court of Appeals explained, "[n]otice is inadequate when the EEOC fails to inform a claimant of the time within which suit must be filed."  DeTata, 632 F.3d at 970.  "Particularly because the limitations period is so short, it makes sense that notice must include an explanation of when the filing clock begins to run."  Id.  The DeTata court held that an oral notice of a person's right to sue did not trigger the ninety-day clock because, "[m]ost importantly, there is nothing in the record to suggest that the EEOC ever told [the plaintiff] when her 90-day clock began to run."  632 F.3d at 969.  In a similar circumstance, the Ebbert court held an oral conversation insufficient to begin the ninety-day clock because "no evidence show[ed] that [the plaintiff] was told or otherwise knew the 90 days would start running from the date of the [phone] conversation."  319 F.3d at 116.  As in DeTata and Ebbert, there is no evidence that the EEOC told Montalvo's attorney the ninety days would begin on August 27; to the contrary, the EEOC implied a few days later that the ninety days had not yet begun.  See Docket No. 25, Ex. 4 at p. 1.

Inadequate notice is also an equitable reason for not beginning the ninety-day clock on August 27.  In Baldwin, 466

U.S. at 151, the Supreme Court listed inadequate notice by the EEOC among equitable reasons to toll the ninety-day clock. The Baldwin Court also cited a decision by the Ninth Circuit Court of Appeals, Gates v. Georgia-Pacific Corp., 492 F.2d 292, 295 (9th Cir. 1974), where the EEOC sent one letter to the aggrieved party stating it was closing her case for lack of jurisdiction, then subsequently sent another letter stating the aggrieved party could file suit within the prescribed statutory period. The Gates court said the statutory clock for filing in the district court commenced with the second letter and suggested this was due in part to equitable principles. Id.

In fact, there is a long history of courts grappling with the implications of two different communications by the EEOC. In the past, the EEOC had a practice of sending an initial letter stating that (i) conciliation had failed, (ii) a right-to-sue letter could be requested, and (iii) the ninety-day clock would begin after receipt of the right-to-sue letter. 4 Lex K. Larson, *Employment Discrimination* § 74.07[1], at pp. 74-43 to -44 (2d ed. 2019) [hereinafter Larson]. Most courts held that the statutory clock did not begin until receipt of the right-to-sue letter—even though the initial letter might have satisfied the requirements of the statute—because barring an action by a plaintiff who followed the EEOC's advice would be either inequitable or contrary to the

statute.  Id.; see, e.g., Lacy v. Chrysler Corp., 533 F.2d 353,
355-59 (8th Cir. 1976) (en banc); De Matteis v. Eastman Kodak Co.,
520 F.2d 409, 411 (2d Cir. 1975).

That two-letter practice is similar to the
situation before the Court.  The EEOC told Montalvo's attorney on
September 6 that he should send a letter to the EEOC providing the
address to which a right-to-sue letter should be sent, and the
ninety-day clock would commence upon receipt of the responsive
document. (Docket No. 25, Ex. 4 at p. 1.)  As such, the reasoning
applied by courts to the two-letter practice, see Larson
§ 74.07[1], at pp. 74-43 to -44; Lacy, 533 F.2d at 355-59; De
Matteis, 520 F.2d at 411, provides equitable and statutory reasons
for not beginning the ninety-day clock on August 27.

Further, EEOC regulations require notice of the
right to sue to include "[a]dvice concerning the institution of
such civil action by the person claiming to be aggrieved, where
appropriate."  29 C.F.R. § 1601.28(e)(2).  Whatever was
communicated on August 27 cannot be divorced from the September 6
advice, namely, that the ninety-day clock would begin at a later
date upon receipt of the right-to-sue letter. (Docket No. 25,
Ex. 4 at p. 1.)  Montalvo should be entitled to rely on the
representations made by the EEOC.  As one court put it when
confronted by an administrative oversight by the EEOC:

> Indeed, as a policy matter [the plaintiff] should be entitled to rely in good faith on the accuracy of a notice sent to her by a federal administrative agency. She should not be denied her day in court because of EEOC's negligence. Nor should she or her counsel, as [the defendant] would have it, be commandeered to act as EEOC's superintendent, obligated to oversee its processing of the charge to ensure that it is following its own regulations.

Walker v. United Parcel Serv., Inc., 240 F.3d 1268, 1273 (10th Cir. 2001); see also Bracey v. Helene Curtis, Inc., 780 F. Supp. 568, 570 (N.D. Ill. 1992) (holding that plaintiff's action was not time-barred because equitable tolling applies where she relied on EEOC's miscalculation of the deadline for filing suit).

In light of the above considerations, at this stage of the proceeding, the Court harbors doubt that the ninety-day clock should begin on August 27. The Court cannot dismiss pursuant to an affirmative defense where there is such doubt. Zenón, 924 F.3d at 616; Ruiz-Sánchez, 717 F.3d at 252; Blackstone Realty, 244 F.3d at 197. Therefore, Montalvo's Title VII claims will not be dismissed based on a start date of August 27.

### 4. October 9

That leaves receipt of, or notice given by, the October 9 document as the starting point of the ninety-day clock. According to the counting rules in Federal Rule of Civil Procedure 6(a)(1), ninety days from October 9 is January 7, 2019. See Rhodes v. Raytheon Co., 555 F. App'x 665, 667 (9th Cir. 2014)

(employing the counting rules in Rule 6(a)(1) to determine compliance with the ninety-day requirement).

Montalvo filed her complaint on January 8, 2019. (Docket No. 1.) Therefore, defendants argue, Montalvo's complaint is one day late. (Docket No. 28 at p. 7.)

The record does not show when Montalvo received, or was given notice of, the document and attached notice. Without evidence regarding the date that a right-to-sue notice was received, courts typically presume—and this Court does presume—that the notice was received three days after the date shown on the notice. See, e.g., Baldwin, 466 U.S. at 148 n.1; Hales, 886 F.3d at 736; Loubriel, 694 F.3d at 143; McGill, 290 F. App'x at 373 n.1. With that presumption, Montalvo's complaint was filed within the ninety-day timeline prescribed 42 U.S.C. section 2000e-5(f)(1).

### 5. Conclusion

The Court will not dismiss Montalvo's Title VII claims on timeliness grounds. It cannot be said that there is "no doubt" that Montalvo's Title VII claim is time barred, Zenón, 924 F.3d at 616; Blackstone Realty, 244 F.3d at 197, or that the facts suffice to establish the affirmative defense with certitude, Ruiz-Sánchez, 717 F.3d at 252.

The presumption that a right-to-sue letter is received three days after the date shown on the notice is, however, rebuttable. Hill v. Textron Auto. Interiors, Inc., 160 F. Supp. 2d 179, 183 (D.N.H. 2001) (citing Sherlock v. Montefiore Med. Ctr., 84 F.3d 522, 526 (2d Cir. 1996)). Defendants may present evidence in a motion for summary judgment motion rebutting the presumption, or otherwise showing that the ninety-day timeliness requirement calls for summary judgment to be entered against Montalvo on her Title VII claim (and Montalvo may of course respond). See Montas v. Minn. Mining & Mfg., Civ. No. 09-1142, 2009 WL 2431510, at *3 (D.P.R. Aug. 7, 2009) (Casellas, J.) (denying motion to dismiss based on timeliness grounds and permitting defendants to file a motion for summary judgment on Title VII timeliness grounds).

### B. Presentment

#### 1. General Principles

Courts generally approach the issue of whether a judicial complaint comes within the parameters of an administrative charge using one of two tests. Larson § 76.06[2][a], at 76-22 to -23; see Clockedile, 245 F.3d at 4–5 (discussing the two tests). Some courts limit the scope of the judicial complaint to "the scope of the EEOC investigation which can reasonably be expected to grow out of the charge." Sánchez v. Standard Brands, Inc., 431 F.2d 455, 466 (5th Cir. 1970). Other

courts hold that "the judicial complaint . . . may encompass any discrimination like or reasonably related to the allegations of the EEOC charge, including new acts occurring during the pendency of the charge before the EEOC." Oubichon v. N. Am. Rockwell Corp., 482 F.2d 569, 571 (9th Cir. 1973).

The First Circuit Court of Appeals has taken both the Sánchez and Oubichon approaches.  In some cases, the court has said—as in Sánchez—that the scope of the civil complaint is limited by the investigation which can reasonably be expected to grow out of the charge filed with the EEOC.  Mount v. U.S. Dep't of Homeland Security, 937 F.3d 37, 47 (1st Cir. 2019); Rodríguez v. United States, 852 F.3d 67, 80 (1st Cir. 2017); Thornton, 587 F.3d at 31; Fantini v. Salem State Coll., 557 F.3d 22, 26–28 (1st Cir. 2009); White v. N.H. Dep't of Corr., 221 F.3d 254, 263 (1st Cir. 2000); Lattimore, 99 F.3d at 464.  By contrast, other decisions turn on whether "the judicial complaint . . . bear[s] some close relation to the allegations presented to the agency," a standard akin to Oubichon.  Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 223 (1st Cir. 2012); Velázquez-Ortiz v. Vilsack, 657 F.3d 64, 71 (1st Cir. 2011); Franceschi, 514 F.3d at 86 n.5; Jorge, 404 F.3d at 565.  An early decision seems to blend or merge the two tests, a practice not expressly repeated in subsequent decisions.  See Powers v. Grinnell Corp., 915 F.2d 34, 38 (1st Cir. 1990) (citations and

internal quotation marks omitted) ("The scope of the civil complaint is accordingly limited by the charge filed with the EEOC and the investigation which can reasonably be expected to grow out of that charge. Thus, ADEA claims are cognizable if they are like or reasonably related to the allegations of the charge and grow out of such allegations.").

For retaliation claims, the First Circuit Court of Appeals' approach is settled. At one time, the First Circuit Court of Appeals employed the Sánchez test in addressing claims of retaliation for filing an administrative charge with the EEOC. Johnson v. Gen. Elec., 840 F.2d 132, 139 (1st Cir. 1988). Later, the court held that the proper test for retaliation claims is similar to the Oubichon approach: "retaliation claims are preserved so long as the retaliation is reasonably related to and grows out of the discrimination complained of to the agency—e.g., the retaliation is for filing the agency complaint itself." Clockedile, 245 F.3d at 6. If retaliation is official, the Clockedile court explained, there is no need to worry about notice because the employer should already know. Id. at 5-6. The Clockedile court took no position on the proper rule for situations in which a plaintiff advances a claim unrelated to retaliation. Id. at 6.

No matter the test employed, the decisions of the First Circuit Court of Appeals agree on a few points. None of the decisions require a judicial complaint precisely to mirror the administrative charge. See, e.g., Velázquez-Ortiz, 657 F.3d at 71 (internal quotation marks omitted) (explaining that the language in a judicial complaint "need not presage with literary exactitude the judicial pleadings which may follow"); Thornton, 587 F.3d at 31–32 (same). Rather, the key is that the administrative charge alerts the employer and the EEOC as to the basis of the discrimination claim that the employee first raises in federal court. Velázquez-Ortiz, 657 F.3d at 71; Thornton, 587 F.3d at 32. Thus, an aggrieved party may raise "collateral and alternative bases or acts" not within "the four corners of the underlying administrative charge" of which the employer is sufficiently alerted because the bases or acts either "would have been uncovered in a reasonable investigation," Thornton, 587 F.3d at 32, or "bear some close relation" to the allegations in the administrative charge, Velázquez-Ortiz, 657 F.3d at 71; see Franceschi, 514 F.3d at 86 n.5. The presentment requirement, however, is not so broad as to be merely "a simple notice requirement that some claim may be brought, thereby depriving employers of the opportunity to resolve issues at an early stage and rendering the EEOC (and state-level equivalents) superfluous." Thornton, 587 F.3d at 32.

### 2. "Stripping of Duties"

Montalvo's allegation of "stripping of duties" appears to generally concern her retaliation claim. She alleges that she was subject to retaliation when she returned to work after her sick leave and forced vacation leave, (Docket No. 1 at p. 12,) and it was at this time she learned that her duties had been stripped, id. at p. 9.

To be sure, Montalvo does not mention "stripping of duties" in her administrative charge. See Docket No. 19, Ex. 1 at p. 1. And Montalvo's judicial complaint does not expressly link the stripping of duties to the harassment and other discrimination of which she complained to the EEOC. See Docket No. 1 at p. 9.

Nonetheless, the duty stripping occurred within two to three weeks of the harassment which is identified in the administrative charge. See Docket No. 19, Ex. 1 at p. 1; Docket No. 1 at pp. 3-5, 9. "Where the evidence shows only that the decisionmaker knew of the complainant's protected conduct at the time the adverse employment action was taken, causation may be inferred from a very close temporal relationship between the protected activity and the adverse action." Velázquez-Ortiz, 657 F.3d at 72. While "[p]eriods of three or four months have been held to be insufficient to support such an inference," id., the short time period at issue here permits an inference of causation

between "the discrimination complained of to the agency" and the retaliation, see Clockedile, 245 F.3d at 6.[6] Therefore, the Court infers that the retaliation is "reasonably related to and grows out of" the discrimination of which Montalvo complained to the EEOC, and Montalvo's allegation concerning stripping of duties satisfies the presentment requirement. Id.

To the extent Montalvo alleges that the stripping of duties was part of the hostile work environment, the allegation also satisfies the presentment requirement. The Oubichon test is satisfied for the reasons given in the preceding paragraph. The Sánchez test is satisfied because any reasonable investigation by the EEOC would have uncovered the stripped duties. It is beyond peradventure that investigators would ask DNA Auto about changes in Montalvo's employment situation after the filing of her administrative charge. See Gregory v. Ga. Dep't of Human Res., 355 F.3d 1277, 1280-81 (11th Cir. 2004) (explaining that a reasonable EEOC investigation of the plaintiff's charge of race and sex discrimination would have uncovered retaliation). During an investigation, the EEOC may access "virtually any material that might cast light on the allegations against the employer." EEOC

---

[6] Further, Montalvo alleged in her administrative charge that "Human Resources has not taken the appropriate actions." (Docket No. 19, Ex. 1 at p. 1.) Both Montalvo's allegation in the administrative charge and the stripping of duties relate to how the human resources department responded to her report of sexual harassment.

v. Shell Oil Co., 466 U.S. 54, 68–69 (1984).  Montalvo's duties,

moreover, were stripped within ten days from the filing of her

administrative charge, see Docket No. 19, Ex. 1 at p. 1; Docket

No. 1 at p. 9, leaving ample time for EEOC to discover the fact.

> **3.    Intimidation**

Here too the Court is confronted with allegations

in Montalvo's complaint—acts of intimidation—that were not

expressly discussed in her administrative charge.  See Docket

No. 19, Ex. 1 at p. 1; Docket No. 1 at pp. 6, 10.  Defendants'

efforts to exclude these allegations also fail.

Montalvo stated in her administrative charge that

Del Valle harassed her on February 24.  (Docket No. 19, Ex. 1 at

p. 1.)  On that date, Del Valle slapped her butt and intimidated

her.  (Docket No. 1 at pp. 3–4.)

The identification of the February 24 incident in

the administrative charge was sufficient to provide notice of her

harassment claim, including the attendant allegations of

intimidation on other dates, pursuant to both the Sánchez and

Oubichon approaches.  In Fantini, 557 F.3d at 26–28, a case

following the Sánchez approach, the court found the plaintiff's

charge sufficient to support her claims for gender discrimination

and retaliation because she "specifically described an alleged

incident of disparate treatment involving her and [a] male

employee, . . . as well as specifically stated that she believed
her termination . . . was a pretext for gender discrimination."
In White, 221 F.3d at 263, another case taking the Sánchez
approach, the court held the district court did not abuse its
discretion in allowing evidence of incidents not specified in an
administrative charge.  This is because, the White court said, the
administrative charge included a "partial list" of alleged
discriminatory incidents "sufficient to describe the essential
nature of the charge and to lead to a reasonable investigation
thereof."  Id.

        A case applying the Oubichon approach, Franceschi,
514 F.3d at 86 n.5, made plain that a Title VII complainant may
expound on, and even add to, allegations identified in an
administrative charge submitted to the EEOC.  The Franceschi court
held that allegations of a hostile work environment resulting from
harassment, although "more thoroughly set forth in [plaintiff's]
complaint and brief than they were in his administrative charge,"
bore close relation to an administrative charge of a pattern of
harassment.  Id.  And allegations in the judicial complaint
associated with a poor job performance rating and a demotion,
although "somewhat broader than . . . the administrative
charge . . . in that they aver two further instances of

discrimination," bore close relation to an administrative charge of a gender-based performance rating.  Id.

The teaching of Fantini, White, and Franceschi is that factual allegations not discussed in an administrative charge may be included in a judicial complaint to buttress an otherwise properly exhausted claim so long as the facts would have been discovered in a reasonable investigation (Sánchez approach) or bear close relation to the substance of the administrative charge (Oubichon approach).  Montalvo's allegations of intimidation, as harassment additional to that suffered in the February 24 incidents identified in her administrative charge, fit well within that teaching.

Indeed, the fact that the intimidation is another way that Del Valle harassed Montalvo, as opposed to a wholly separate claim of discrimination, distinguishes Montalvo's case from other situations where the First Circuit Court of Appeals has found the presentment requirement unsatisfied.  In those situations, the aggrieved party sought to introduce into judicial proceedings a different type of discrimination than was identified in the administrative charge.  For instance, in Rodríguez, 852 F.3d at 80, the court said that "a disparate impact allegation [cannot] somehow encompass an intentional discrimination claim on the theory that the agency would have investigated intent in

connection with the disparate impact claim."  Even more simply, as held by the court in Jorge, 404 F.3d at 565, an administrative charge of age discrimination pursuant to the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634, does not exhaust remedies for a Title VII suit.  And in Lattimore, 99 F.3d at 464, the court explained that an administrative charge identifying discrimination "relat[ing] solely to employment decisions"—such as termination upon refusal to return to work after an injury—"cannot reasonably be construed to include any harassment by [plaintiff's supervisor] before [plaintiff's] injury."  The Lattimore court further noted that "[t]he two claims are based upon different facts that are separate and distinct both qualitatively and temporally" and "relate to the conduct of different individuals."  Id. at 465.

Another case, Powers, 915 F.2d at 37-39, is instructive.  In Powers, an aggrieved party had been discharged from a company with a promise to be rehired for another position. Id. at 35.  After he was not rehired, he filed an administrative charge asserting a discriminatory failure to hire.  Id. at 38. The administrative charge mentioned four positions to which the individual was not hired.  Id. at 38.  At trial, in addition to the four positions, the aggrieved party presented evidence of "other job openings, the informal company policy of reassigning project managers after the completion of their projects, and a

temporal span reaching beyond the period identified in the administrative charge." Id.

The Powers court refused to find the additional evidence improper. Id. at 38-39. The Powers court focused on "the plain import of the administrative charge as a whole" and "the breadth of the administrative inquiry reasonably required to investigate the charge." Id. at 38. The administrative charge did not simply assert the aggrieved party was not hired for four specific positions, the Powers court explained, but rather encompassed the employer's related actions as well. See id. Moreover, "the very heart of the administrative charge" was the employer's decision to discharge the aggrieved party rather than employ him elsewhere; "[t]herefore," the Powers court concluded, "all evidence relevant to the charge, including [the employer's] unwritten reassignment policy and the nine other openings, reasonably could be expected to have come under administrative investigation." Id. at 39.

Montalvo's administrative charge is similar to the charge in Powers. In tandem with Del Valle's harassment and her supervisor's response, Montalvo noted in the administrative charge that "Human Resources has not taken the appropriate actions." (Docket No. 19, Ex. 1 at p. 1.) As such, her charge is broader than identification of merely one or two discriminatory incidents.

A reasonable investigation would inquire about what the human resources department had done to prevent and remedy harassment, such as continuing acts of intimidation. Further, a reasonable investigation of Montalvo's charge would have keyed into evidence relevant to the heart of her administrative charge—harassment—including additional acts of intimidation. Id.

Defendants make much of Maldonado-Cordero, 73 F. Supp.2d 177, arguing that this Court should dismiss Montalvo's complaint by following its reasoning, (Docket No. 28 at pp. 8-9; Docket No. 19 at pp. 6-9.) In the administrative charges at issue in that case,

> each Plaintiff alleged she was the victim of a "hostile environment," but fail[ed] to set forth any specific facts or instances of conduct giving rise to a hostile work environment claim. [One plaintiff's] charge, for example, only indicate[d] that "I have been the victim of a hostile environment that is directly related to my condition as a woman and that also affects other female co-workers. Messrs. Luna (Director of Sales and Marketing) and Figueroa (Director of Human Resources) are the persons that promote and maintain hostile and discriminatory attitudes towards women."

Maldonado-Cordero, 73 F. Supp. 2d at 187. The Maldonado-Cordero court held that claims of sexual harassment and hostile work environment were not exhausted because "[n]aked allegations of a 'hostile environment' in an EEOC charge, devoid of any details such as would put the respondents on notice that they were being charged with sexual harassment and as would give the EEOC the

opportunity to investigate and conciliate, do not satisfy the exhaustion requirement." Id.

Defendants' contentions regarding Maldonado-Cordero are unavailing. For one thing, Maldonado-Cordero, a decision by another court in this district, is not binding on this Court. In any case, Maldonado-Cordero is readily distinguishable. Unlike the plaintiff in Maldonado-Cordero, Montalvo's EEOC charge identified a date, circumstances, persons, and employer division causing or contributing to harassment. (Docket No. 19, Ex. 1 at p. 1.) These facts satisfy the concern about notice raised by the court in Maldonado-Cordero, 73 F. Supp. 2d at 187.

### 4.  Conclusion

The underlying problem for defendants' presentment arguments is that Montalvo's administrative charge satisfied the purpose of the presentment requirement—promoting early conciliation between the parties and providing prompt notice of the claim to the employer and the EEOC. Thornton, 587 F.3d at 31; Lattimore, 99 F.3d at 464. The caselaw discussed above has developed to accomplish those purposes. It is thus no surprise that, though the caselaw has its twists and turns, Montalvo's Title VII claim sails through the requirement without running aground. Consequently, because the Court doubts that Montalvo's Title VII claim is barred by the affirmative defense of exhaustion associated

with the presentment requirement, dismissal on that basis is not

appropriate.   Zenón, 924 F.3d at 616; Ruiz-Sánchez, 717 F.3d at

252; Blackstone Realty, 244 F.3d at 197.

### C.   Failure to State a Claim

#### 1.   General Principles

"A hostile work environment is one 'permeated with

discriminatory intimidation, ridicule, and insult, that is

sufficiently severe or pervasive to alter the conditions of the

victim's employment.'"   Roy v. Correct Care Sols., LLC, 914 F.3d

52, 61 (1st Cir. 2019) (quoting Harris, 510 U.S. at 21.)   "This

type of hostile or abusive work environment is generally referred

to as 'sexual harassment.'"   Lockridge v. The Univ. of Me. Sys.,

597 F.3d 464, 473 (1st Cir. 2010) (quoting Billings v. Town of

Grafton, 515 F.3d 39, 47 (1st Cir. 2008)).

A sex-based hostile work environment claim requires

proof of six elements.   Nieves-Borges v. El Conquistador P'Ship,

L.P., S.E., 936 F.3d 1, 8 (1st Cir. 2019).   These six elements are

> (1) that she (or he) is a member of a protected class;
> (2) that she was subjected to unwelcome sexual
> harassment; (3) that the harassment was based upon sex;
> (4) that the harassment was sufficiently severe or
> pervasive so as to alter the conditions of plaintiff's
> employment and create an abusive work environment; (5)
> that sexually objectionable conduct was both objectively
> and subjectively offensive, such that a reasonable
> person would find it hostile or abusive and the victim
> in fact did perceive it to be so; and (6) that some basis
> for employer liability has been established.

Id. (quoting Roy, 914 F.3d at 62). "This standard . . . takes a middle path between making actionable any conduct that is merely offensive and requiring the conduct to cause a tangible psychological injury." Franchina v. City of Providence, 881 F.3d 32, 46 (1st Cir. 2018) (internal quotation marks omitted). It "demands that [a court] distinguish between the ordinary, if occasionally unpleasant, vicissitudes of the workplace and actual harassment." Id. (internal quotation marks omitted).

To survive a motion to dismiss based on failure to state a claim upon which relief can be granted, a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. Assessing the adequacy of a complaint in the First Circuit involves two steps. Zenón, 924 F.3d at 615-16. First, a court "isolate[s] and ignore[s] statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." Id. at 615 (internal quotation marks omitted). Second, the court "take[s] the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor" to "see if they plausibly narrate a claim for relief." Id. at 615-16 (internal quotation marks omitted).

Complaints alleging employment discrimination are not subject to a heightened pleading standard. Swierkiewicz v.

Sorema N.A., 534 U.S. 506, 513 (2002). "Although a plaintiff must plead enough facts to make entitlement to relief plausible in light of the evidentiary standard that will pertain at trial[,] . . . she need not plead facts sufficient to establish a *prima facie* case." Rodríguez-Reyes v. Molina-Rodríguez, 711 F.3d 49, 54 (1st Cir. 2013). The elements of a *prima facie* case "are part of the background against which a plausibility determination should be made" and "may be used as a prism to shed light upon the plausibility of the claim." Id.

Indeed, "[t]he relevant question for a district court in assessing plausibility is not whether the complaint makes any particular factual allegations but, rather, whether 'the complaint warrant[s] dismissal because it failed *in toto* to render plaintiffs' entitlement to relief plausible.'" Id. at 55 (alteration in original) (quoting Twombly, 550 U.S. at 569 n.14). "There need not be a one-to-one relationship between any single allegation and a necessary element of the cause of action." Id. "What counts is the 'cumulative effect of the [complaint's] factual allegations." Id. (alteration in original) (quoting Ocasio-Hernández, 640 F.3d at 14).

The Court uses the six-element test for harassment in ascertaining whether the plausibility of Montalvo's hostile work environment claim. Of note, however, defendants only contest

Montalvo's pleading regarding whether she has alleged facts plausibly showing that the harassment she suffered was severe or pervasive. Consequently, defendants have waived arguments for dismissal for failure to state a claim pursuant to Rule 12(b)(6) related to the other elements of the six-element test. See Roy, 914 F.3d at 62 n.1; Marek v. Rhode Island, 702 F.3d 650, 655 (1st Cir. 2012). Nevertheless, because Montalvo's only burden is to state a plausible claim for relief, Twombly, 550 U.S. at 570; Rodríguez-Reyes, 711 F.3d at 54-55, and the plausible strength of the allegations pertaining to some factors may be relevant to other factors, see Gerald v. Univ. of P.R., 707 F.3d 7, 19 (1st Cir. 2013) (stating that element requiring severe or pervasive harassment affecting work performance did not warrant summary judgment against plaintiff "especially given the evidence we have as to the other considerations"), the Court considers all the elements of the six-element test.

> **2. Whether Montalvo Is a Member of a Protected Class and Was Subjected to Unwanted Sexual Harassment Based Upon Her Sex**

Montalvo is a woman. (Docket No. 1 at p. 2.) Del Valle, a man, slapped Montalvo on her butt cheeks without consent. Id. at pp. 3-4. He then intimidated her, both immediately after the slapping and following Montalvo's complaint to human resources and to the EEOC. Id. at pp. 4, 6, 10. Moreover, after she reported

Del Valle's slapping, Montalvo received a call from her supervisor. Id. at p. 5. Branding her as "my little one," the supervisor told Montalvo that Del Valle was innocent and that even he, the supervisor, would have slapped Montalvo's butt. Id. When Montalvo returned to work after taking sick leave and forced vacation leave, a human resources representative asked her, "My, do you still work here? I thought that [DNA Auto] had given you a few thousand dollars so you would not return to work." Id. at p. 9 (alteration in original). After another sick leave, she returned to work to find that her duties had been stripped and her supervisor, a man, had assumed the duties or assigned them to others. Id.

Those facts plausibly allow Montalvo to satisfy the first three elements of the six-element test. The butt slapping leaves little doubt that it is based on Montalvo's gender, and indeed is sexual in nature. See Gerald, 707 F.3d at 17–18. There is no indication that it was welcome; indeed, Montalvo alleges that it was not consensual. (Docket No. 1 at p. 4.)

The supervisor's call must be understood in context. See Xiaoyan Tang v. Citizens Bank, N.A., 821 F.3d 206, 216–17 (1st Cir. 2016) (explaining and applying the truisms that "Title VII requires no magic words to convert a verbal exchange into the stuff of sexual harassment" and "[t]he context in which something is said may be just as important as what is said").

While dubbing Montalvo "my little one" and expressing an inclination to act similarly to another employee might in some circumstances not be harassment based on Montalvo's gender, the context of the statements plausibly suggests otherwise here. The supervisor's comments follow (on the same day) Montalvo's harassment complaint, express a propensity related to that harassment, and employ a diminutive epithet. In Roy, 914 F.3d at 62-63, the court held a reasonable jury could conclude that both sexually degrading, gender-specific epithets and comments about a woman's "ass" were made, at least in part, because of the woman's sex. And, once again, the record suggests the comments were unwelcome, as Montalvo promptly ended the phone call without responding to the supervisor. (Docket No. 1 at p. 5.)

Del Valle's intimidating acts, while not obviously gender-based on their own, must also be considered in their context. "For pleading purposes, circumstantial evidence often suffices to clarify 'a protean issue such as an actor's motive or intent.'" Rodríguez-Reyes, 711 F.3d at 56 (quoting Anthony v. Sundlun, 952 F.2d 603, 605 (1st Cir. 1991)). "Discriminatory conduct unlawfully based on one's membership in a protected class need not be overt to be actionable." Flood v. Bank of Am. Corp., 780 F.3d 1, 11 (1st Cir. 2015); see Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998) ("[H]arassing conduct need

not be motivated by sexual desire to support an inference of discrimination on the basis of sex.").

> Courts should avoid disaggregating a hostile work environment claim, dividing conduct into instances of sexually oriented conduct and instances of unequal treatment, then discounting the latter category of conduct. Such an approach not only ignores the reality that incidents of nonsexual conduct—such as work sabotage, exclusion, denial of support, and humiliation—can in context contribute to a hostile work environment, it also nullifies the harassing nature of that conduct.

Burns v. Johnson, 829 F.3d 1, 17 (1st Cir. 2016) (internal quotation marks omitted). That Del Valle's intimidating acts come on the heels of the butt slapping incident makes the acts similar to other circumstances in which courts have found a gendered basis in workplace actions. See, e.g., Burns, 829 F.3d at 17 (explaining that a supervisor's use of a bat around men and women "does not preclude the inference that [the supervisor] used the bat in a gender-specific way around [the employee]"); Xiaoyan Tang, 821 F.3d at 217 (noting that a reasonable jury could conclude that a supervisor's yelling at an employee was sex-based where it was motivated by a past sex-based interaction); Pérez-Cordero v. Wal-Mart P.R., Inc., 656 F.3d 19, 28 (1st Cir. 2011) (quoting Forrest v. Brinker Int'l Payroll Co., L.P., 511 F.3d 225, 229 (1st Cir. 2007)) ("[W]hen harassment is motivated by a failed attempt to establish a romantic relationship, 'the victim's sex is inextricably linked to the harasser's decision to harass.'").

Before Montalvo's duties were stripped, she was the only female manager. See Docket No. 1 at p. 10. "A jury could find on one of several theories that [retaliatory conduct was motivated] not only because of her whistleblowing but also because of her sex," including because the retaliation was "committed alongside overtly sexual harassment." Roy, 914 F.3d at 63-64.

The Court does not parse a complaint piece by piece to determine whether each allegation in isolation is plausible. Ocasio-Hernández, 640 F.3d at 14. "What counts is the 'cumulative effect of the [complaint's] factual allegations.'" Rodríguez-Reyes, 711 F.3d at 55 (alteration in original) (quoting Ocasio-Hernández, 640 F.3d at 14). Taken together, the factual allegations discussed above plausibly satisfy the first three elements of the test set forth in Nieves-Borges, 936 F.3d at 8.

Some of the incidents alleged by Montalvo, like the human resource representative's comment to Montalvo, (Docket No. 1 at p. 9,) do not appear to be plausibly based on Montalvo's sex. The presence of some harassment which, at this stage of the proceedings, seems to lack "'obvious sexual connotations,'" however, "'does not diminish the force of . . . evidence [that] indicat[es] gender-based animus." Nieves-Borges, 936 F.3d at 10 (alterations in original) (quoting Pérez-Cordero, 656 F.3d at 28). "Indeed, . . . such acts may be added to the mix in assessing a

hostile work environment claim." <u>Rosario v. Dep't of Army</u>, 607 F.3d 241, 248 (1st Cir. 2010); <u>see</u> <u>O'Rourke v. City of Providence</u>, 235 F.3d 713, 729–30 (1st Cir. 2001).

### 3. Whether the Harassment Was Sufficiently Severe or Pervasive and Objectively and Subjectively Offensive

Defendants concentrate their motion to dismiss on whether the harassment was sufficiently severe or pervasive. <u>See</u> Docket No. 19 at pp. 12–15. This is not unusual, as "there is seldom a defensible purpose behind discriminatory harassment and the real question is typically whether the bad acts taken in the aggregate are sufficiently severe or pervasive to be actionable." <u>Gerald</u>, 707 F.3d at 18.

Hostile environment claims are "highly fact-specific." <u>Billings</u>, 515 F.3d at 49. "There is no mathematically precise test" utilized to determine whether harassment was sufficiently severe or pervasive. <u>Gerald</u>, 707 F.3d at 18. "[A] court must mull the totality of the circumstances, including factors such as the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere[d] with an employee's work performance." <u>Maldonado-Cátala v. Mun. of Naranjito</u>, 876 F.3d 1, 10 (1st Cir. 2017) (second alteration in original) (internal quotation marks omitted).

"Evidence of sexual remarks, innuendoes, ridicule, and intimidation may be sufficient to support a jury verdict for a hostile work environment," O'Rourke, 235 F.3d at 729, but "[a] worker need not be propositioned, touched offensively, or harassed by sexual innuendo in order to have been sexually harassed," Billings, 515 F.3d at 48 (alteration in original) (internal quotation marks omitted). Conduct need not be both severe and pervasive; satisfaction of one factor is sufficient. Nieves-Borges, 936 F.3d at 10.

"Nevertheless, the harassment must pass a certain threshold of severity." Flood, 780 F.3d at 12. Mere discomfort is insufficient. Ponte v. Steelcase Inc., 741 F.3d 310, 320 (1st Cir. 2014). Title VII was not intended to be a "general civility code" for the workplace, Oncale, 523 U.S. at 81, so "offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment," Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (internal quotation marks omitted); see Flood, 780 F.3d at 12 ("Offhand comments and a tense or uncomfortable working relationship with one's supervisor are, without more, insufficient to support a hostile work environment claim."). "[T]he workplace is not a cocoon, and those who labor in it are expected to have

reasonably thick skins." <u>Marrero v. Goya of P.R., Inc.</u>, 304 F.3d 7, 19 (1st Cir. 2002) (internal quotation marks omitted).

Contrary to defendants' exhortation, <u>see</u> Docket No. 19 at pp. 12-15, "a single act of harassment may, if egregious enough, suffice to evince a hostile work environment," <u>Noviello v. City of Boston</u>, 398 F.3d 76, 84 (1st Cir. 2005). For example, one "incident in which [a supervisor] grabbed [an employee's] breasts and made sexually suggestive noises comfortably qualifies as egregious." <u>Gerald</u>, 707 F.3d at 18.

Perhaps Del Valle's slapping of Montalvo's butt cheeks is somewhat less egregious than the incident in <u>Gerald</u>. Montalvo did not plead that Del Valle made sexually suggestive noises or sexually proposition her at the same time he slapped her butt. <u>See</u> Docket No. 1 at pp. 3-4. And Del Valle is not Montalvo's supervisor. <u>See</u> <u>id.</u> at p. 3. As with the breast grabbing incident in <u>Gerald</u>, however, Del Valle's slapping was "physically threatening (not to mention criminal)." 707 F.3d at 18. In any case, by its own terms—"comfortably qualifies"—<u>Gerald</u> does not establish a minimum baseline to which all future claims must meet. <u>Id.</u>; <u>see also</u> <u>Billings</u>, 515 F.3d at 49 (quoting <u>Schiano v. Quality Payroll Sys., Inc.</u>, 445 F.3d 597, 606 (2d Cir. 2006)) (explaining that prior cases on hostile work environment claims "'do not

establish a baseline that subsequent plaintiffs must reach in order to prevail'").

Del Valle's butt slapping is not the only incident that Montalvo pleads in support of her claim for a hostile work environment. After she reported Del Valle's slapping, Montalvo's supervisor referred to her as "my little one" and told her that even he would have slapped Montalvo's butt. (Docket No. 1 at p. 5.) The supervisor's comments do not appear to be offhand because they relate to Montalvo's complaint, made earlier in the day, of being harassed by Del Valle. See Flood, 780 F.3d at 12.

Montalvo also pleads that Del Valle repeatedly intimidated her, both immediately after the butt slapping and following her complaint to human resources. (Docket No. 1 at pp. 4, 6, 10.) The intimidation, in context with Del Valle's butt slapping, suggests physically threatening behavior. See Burns, 829 F.3d at 18 (holding that a reasonable jury could conclude that a supervisor's conduct was so severe or pervasive as to constitute harassment where "every time [the employee] saw [the supervisor] after he officially took over, he had the bat"); Vera v. McHugh, 622 F.3d 17, 28 (1st Cir. 2010) ("Although Rodríguez did not overtly threaten Vera, the allegation that he blocked her from leaving the office on at least one occasion suggests a physically threatening environment."). Moreover, by failing to curtail the

intimidation, Montalvo's supervisors seem to have aggravated the harassment.  Cf. Roy, 914 F.3d at 64 ("Conduct that places a plaintiff in this sort of peril [from inmates considered dangerous] is severe for purposes of a hostile work environment claim.").

The severity of the totality of the incidents plausibly altered the conditions of Montalvo's employment and created an abusive work environment.  Montalvo was dogged by Del Valle's intimidation in the days and weeks after the butt slapping incident.  See Docket No. 1 at pp. 6, 10; see also Nieves-Borges, 936 F.3d at 9 (internal quotation marks omitted) (holding that "unwanted touching and 'predatory' staring" "could reasonably be deemed acts contributing to the alleged hostile work environment").  Her report of the butt slapping incident was met by the response from her supervisor, before any investigation, that Del Valle was innocent and the supervisor would even have done the same act.  See Docket No. 1 at p. 5.  These incidents, and Montalvo's response, caused the human resources representative to force Montalvo to take vacation leave.  Id. at pp. 7-8; see Roy, 914 F.3d at 64 (alterations and internal quotation marks omitted) ("That officers complained about [plaintiff] and that she requested a transfer . . . could permit a jury to find that the harassment was detracting from [plaintiff's] job performance and discouraging her from remaining on the job, both telltale signs of

a discriminatorily abusive environment."). Then Montalvo's
doctors prescribed sick leave for approximately two work weeks.
Id. at p. 9; see Vera, 622 F.3d at 28 ("[C]onduct that forces an
employee to abandon his or her own office during the workday could
reasonably be seen as interfering with that employee's work
performance.").

The plausible severity of the totality of incidents
Montalvo pled is more severe than the incidents in other cases
found insufficiently severe or pervasive. In Ponte, 741 F.3d at
319-21, the court found insufficiently severe two instances of a
supervisor putting his arm around a female employee's shoulder and
subtly hinting that the employee owed him for hiring her. The
physical contact and subtle hints "ended quickly." Id. at 320.
Here, by contrast, Montalvo was slapped in the butt, after which
her harasser continued to intimidate her and her supervisor
validated the harasser's action. See Docket No. 1 at pp. 5-6, 10.
In Pomales v. Celulares Telefónica, Inc., 447 F.3d 79, 83-84 (1st
Cir. 2006), the court said one incident of a male supervisor
grabbing his own crotch and stating that "it would be great to
come with you" on a sales call was insufficient to ground a
harassment claim. In Montalvo's case there are allegations of
touching and intimidation on top of a supervisor's crude behavior.
See Docket No. 1 at pp. 3-10. For similar reasons, this case is

unlike Velázquez-Pérez v. Developers Diversified Realty Corp., 753 F.3d 265, 275 (1st Cir. 2014), where gifts and an expression of love—without physical touching, extreme language, or obscene behavior—failed to approach severe harassment.

At the motion to dismiss stage, this Court's role is to determine whether the allegations plausibly state a claim for relief. Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 570; Zenón, 924 F.3d at 616. "'[S]ubject to some policing at the outer bounds, it is for the jury to . . . decide whether the harassment was of a kind or to a degree that a reasonable person would have felt that it affected the conditions of her employment.'" Flood, 780 F.3d at 11 (quoting Rosario, 607 F.3d at 247). A well-pleaded complaint may proceed even if it appears that a recovery is very remote and unlikely. Ocasio-Hernández, 640 F.3d at 13 (citing Twombly, 550 U.S. at 556). A hostile work environment claim, moreover, "may be built on the accumulated effect of behaviors that individually fall short." Nieves-Borges, 936 F.3d at 9 (internal quotation marks omitted). When viewed in their totality, the incidents pled by Montalvo are plausibly both objectively offensive and severe so as to alter the conditions of Montalvo's employment and create an abusive work environment.

Moving on, Montalvo alleged facts concerning her own reaction. She alleged that the incidents caused her to feel

shocked, embarrassed, humiliated, nervous, uneasy, angry, offended, fearful, frustrated, uncomfortable, distraught, sleepless, and violated. See Docket No. 1 at pp. 4-10. The human resources representative noticed that Montalvo was affected emotionally. Id. at p. 7. Montalvo also reported the incident to DNA Auto's human resources department, saw medical professionals, and took sick leave. Id. at pp. 5, 9. These facts plausibly support that she was subjectively offended. See Gerald, 707 F.3d at 19 ("On the issue of subjective offense there was adequate evidence: Gerald was bothered by [her supervisor's] invitation to his hotel room, disgusted by him grabbing her breasts, and she was depressed, seeing a psychiatrist, and taking anti-depressants.").

### 4. Whether There Is Some Basis for Employer Liability

Finally, the Court comes to whether Montalvo alleged facts plausibly showing that DNA Auto is liable.

Employer liability extends to coworker harassment if the employer "was negligent in controlling working conditions." Vance v. Ball State Univ., 570 U.S. 421, 424 (2013); see Espinal v. Nat'l Grid NE Holdings 2, LLC, 693 F.3d 31, 36 (1st Cir. 2012) (stating that an employer is liable for coworker harassment where it "knew or should have known about the harassment yet failed to take prompt and appropriate remedial action"). "Evidence that an employer did not monitor the workplace, failed to respond to

complaints, failed to provide a system for registering complaints, or effectively discouraged complaints from being filed would be relevant." Vance, 570 U.S. at 449. The burden is on the plaintiff to make this demonstration. Espinal, 693 F.3d at 36.

Montalvo has alleged facts plausibly satisfying this standard. Although she reported Del Valle's harassment to her supervisor and human resources representatives on February 24, the same day the harassment occurred, Del Valle came near her work area and intimidated her on three subsequent occasions. (Docket No. 1 at pp. 6, 10.)

Employers are strictly liable for harassment by a supervisor. Vance, 570 U.S. at 424; Gerald, 707 F.3d at 19-20. Where no tangible employment action is taken, an employer may show as an affirmative defense that "(1) the employer exercised reasonable care to prevent and correct any harassing behavior and (2) that the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities that the employer provided." Vance, 570 U.S. at 424; see Faragher, 524 U.S. at 807–08.

Montalvo's complaint plausibly satisfies this standard as well. In her administrative charge and in her complaint, she notes that her supervisor phoned her on the same day as she reported Del Valle's harassment, referring to her as

"my little one" and stating that even he would have slapped her
butt.  See Docket No. 19, Ex. 1 at p. 1; Docket No. 1 at p. 5.
She also states that her duties were stripped when she returned
from sick leave and were assumed by her supervisor.  See Docket
No. 1 at p. 9.

  The Court does not consider whether DNA Auto may
assert the affirmative defense discussed in Vance, 570 U.S. at 424,
and Faragher, 524 U.S. at 807-08.  No party has raised the issue.

### D.  Individual Liability Pursuant to Title VII

  There is no individual employee liability pursuant
to Title VII.  Fantini, 557 F.3d at 28-31.  To the extent Montalvo
asserts Title VII claims against Del Valle, see Docket No. 1 at
p. 11, such claims are **DISMISSED** *sua sponte*, **with prejudice**.

## IV.  Conclusion

  For the reasons above, the defendants' motion to dismiss
Montalvo's complaint, (Docket No. 19,) is **DENIED**.  Any Title VII
claims Montalvo asserts against Del Valle, (Docket No. 1 at p. 11,)
are **DISMISSED** *sua sponte*, **with prejudice**.

  **IT IS SO ORDERED.**

San Juan, Puerto Rico, November 5, 2019.

       s/ Francisco A. Besosa
       FRANCISCO A. BESOSA
       UNITED STATES DISTRICT JUDGE